UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN MICHAEL EVANS, | ) | CIVIL ACTION NO. 4:21-CV-00841 |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| Defendant | ) | |

MEMORANDUM OPINION

## I.    INTRODUCTION

Plaintiff John Michael Evans, an adult individual who resides within the Middle District of Pennsylvania, seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits under Title II of the Social Security Act. Jurisdiction is conferred on this Court pursuant to 42 U.S.C. §405(g).

This matter is before me, upon consent of the parties pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. After reviewing the parties' briefs, the Commissioner's final decision, and the relevant portions of the certified administrative transcript, I find the Commissioner's final decision is supported by substantial evidence. Accordingly, the Commissioner's final decision will be AFFIRMED.

II.     BACKGROUND & PROCEDURAL HISTORY

On August 12, 2019, Plaintiff protectively filed an application for disability insurance benefits under Title II of the Social Security Act. (Admin. Tr. 13; Doc. 17, p. 1).  In this application, Plaintiff alleged he became disabled as of July 12, 2017, when he was 32 years old, due to the following conditions: right hand injury, nerve damage in his right hand, muscle atrophy in his right hand, high blood pressure, and breathing issues. (Admin. Tr. 13, 24; Doc. 17, p. 1). Plaintiff alleges that the combination of these conditions affects his ability to sit, stand, walk, lift and carry above the weight of baby "stuff," tie shoe laces, zip zippers, button, sleep, move his right thumb, extend the fingers of his right hand, otherwise use his right hand, leave his house, and shop for groceries. (Doc. 17, p. 3-4). Plaintiff has at least a high school education. (Admin. Tr. 24). Before the onset of his impairments, Plaintiff worked as a mover and arborist. (Doc. 17, p. 2-3).

On November 12, 2019, Plaintiff's application was denied at the initial level of administrative review. (Admin. Tr. 13). On May 17, 2020, Plaintiff requested an administrative hearing. (Admin. Tr. 13).

On August 18, 2020, Plaintiff, assisted by his counsel, appeared and testified during a hearing before Administrative Law Judge Gerard Langan (the "ALJ"). (Admin. Tr. 13, 25). On September 9, 2020, the ALJ issued a decision denying Plaintiff's application for benefits. (Admin. Tr. 25). Plaintiff requested review of the

ALJ's decision by the Appeals Council of the Office of Disability Adjudication and Review ("Appeals Council"). (Admin. Tr. 1; Doc. 17, p. 2).

On March 4, 2021, the Appeals Council denied Plaintiff's request for review. (Admin. Tr. 1; Doc. 17, p. 2).

On May 10, 2021, Plaintiff initiated this action by filing a Complaint. (Doc. 1). In the Complaint, Plaintiff alleges that the ALJ's decision denying the application is not supported by substantial evidence, and improperly applies the relevant law and regulations. (Doc. 1, pp. 1-2). As relief, Plaintiff requests that the Court find that the Plaintiff is entitled to Social Security Disability benefits or remand the case for a further hearing and grant attorney's fees. (Doc. 1, p. 2).

On September 13, 2021, the Commissioner filed an Answer. (Doc. 11). In the Answer, the Commissioner maintains that the decision holding that Plaintiff is not entitled to disability insurance benefits was made in accordance with the law and regulations and is supported by substantial evidence. (Doc. 11, pp. 2-3). Along with her Answer, the Commissioner filed a certified transcript of the administrative record. (Doc. 12).

Plaintiff's Brief (Doc. 17), the Commissioner's Brief (Doc. 18), and Plaintiff's Reply (Doc. 19) have been filed.  This matter is now ripe for decision.

## III.   STANDARDS OF REVIEW

### A.   SUBSTANTIAL EVIDENCE REVIEW – THE ROLE OF THIS COURT

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

"In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). The question before this Court, therefore, is not whether Plaintiff is disabled, but whether the Commissioner's finding that Plaintiff is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

    B.    STANDARDS GOVERNING THE ALJ'S APPLICATION OF THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also*

20 C.F.R. § 404.1505(a).[1] To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(a)(4).

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations

---

[1] Throughout this Opinion, I cite to the version of the administrative rulings and regulations that were in effect on the date the Commissioner's final decision was issued. In this case, the ALJ's decision, which serves as the final decision of the Commissioner, was issued on September 9, 2020.

caused by his or her impairment(s)." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); *see also* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a)(1). In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. § 404.1545(a)(2).

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. 42 U.S.C. § 423(d)(5); 20 C.F.R. § 404.1512; *Mason*, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. § 404.1512(f); *Mason*, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was

accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Id.* at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec.*, 181 F. 3d 429, 433 (3d Cir. 1999).

IV.    DISCUSSION

A.  THE ALJ'S DECISION DENYING PLAINTIFF'S APPLICATION(S)

In his September 2020 decision, the ALJ found that Plaintiff met the insured status requirement of Title II of the Social Security Act through December 31, 2021. (Admin. Tr. 15). Then, Plaintiff's application was evaluated at steps one through step five of the sequential evaluation process.

At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity at any point between July 12, 2017, (Plaintiff's alleged onset date) and September 9, 2020, (the date the ALJ decision was issued) ("the relevant period"). (Admin. Tr. 15, 25). At step two, the ALJ found that, during the relevant period, Plaintiff had the following medically determinable severe impairment(s):digital nerve damage in the right hand, status post right thumb MP fusion, complex regional pain syndrome (CRPS), status post spinal cord stimulator, degenerative disc disease on the cervical spine, and mild reactive airway disease. (Admin. Tr. 16). At step three, the ALJ found that, during the relevant period, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the

severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Admin. Tr. 18).

Between steps three and four, the ALJ assessed Plaintiff's RFC. The ALJ found that, during the relevant period, Plaintiff retained the RFC to engage in sedentary work as defined in 20 C.F.R. § 404.1567(a) subject to the following additional limitations:

> [H]e must avoid unprotected heights, industrial machinery, and climbing on ladders and scaffolds. However, he has no limitations climbing on ramps or stairs, balancing, crouching, crawling, or kneeling. He can tolerate occasional exposure to temperature extremes, vibration, and humidity. The claimant must avoid use of his right non-dominant hand for fingering and handling, except as an assist. He should avoid use of his right, non-dominant hand for pushing and pulling.

(Admin. Tr. 19).

At step four, the ALJ found that, during the relevant period, Plaintiff could not engage in his past relevant work. (Admin. Tr. 23). At step five, the ALJ found that, considering Plaintiff's age, education and work experience, Plaintiff could engage in other work that existed in the national economy. (Admin. Tr. 24). To support his conclusion, the ALJ relied on testimony given by a vocational expert during Plaintiff's administrative hearing and cited the following two (2) representative occupations:

> Video monitor, which is a sedentary exertion position (SVP2) per DOT 379.367-010, with 1,000 positions available in Pennsylvania and 28,000 positions available nationally; and,

> Order clerk, which is a sedentary exertion position (SVP2) per DOT 209.567-014, with 1,000 positions available in Pennsylvania and 32,000 positions available nationally (Hearing Testimony).

(Admin. Tr. 25).

> B. WHETHER THE ALJ ERRED IN FINDING THAT PLAINTIFF COULD ENGAGE IN OTHER WORK THAT EXISTED IN THE NATIONAL ECONOMY, INCLUDING VIDEO MONITOR AND ORDER CLERK.

Plaintiff requests reversal and a finding that Plaintiff is entitled to Social Security Disability insurance benefits or remand the case to the Commissioner. (Doc. 1, p. 2). Plaintiff alleges:

> The ALJ failed to satisfy his burden at Step Five:  [H]e failed to reconcile the conflict between Plaintiff's ability to use only one non-dominant [sic] (right) hand and the jobs found in the national economy that per DOT required the use of both hands.

(Doc. 17, pp. 5-6).

> a. THE RELEVANT LAW

Step five of the sequential evaluation process is unique, as it is the only step where the government bears the burden of proof. *See* 20 C.F.R. § 404.1512(b)(3) ("In order to determine under § 404.1520(g) that you are able to adjust to other work, we must provide evidence about the existence of work in the national economy that you can do . . ., given your residual functional capacity . . . age, education, and work experience."). In most cases, this burden is met by relying on evidence from the two publications by the United States Department of Labor (The <u>Dictionary of</u>

Occupational Titles; and Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles). These publications are often supplemented by testimony from a vocational expert. In 2000, the Social Security Administration published a policy ruling to clarify its standards for the use of vocational experts who provide evidence at ALJ hearings. SSR 00-4p, 2000 WL 1898704. This Ruling explains that:

> Occupational evidence provided by a [vocational expert] generally should be consistent with the occupational information supplied by the [Dictionary of Occupational Titles]. When there is an apparent unresolved conflict between [vocational expert] evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the [vocational expert] evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.

> Neither the [Dictionary of Occupational Titles] nor the [vocational expert] evidence automatically "trumps" when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the [vocational expert] is reasonable and provides a basis for relying on the [vocational expert] testimony rather than on the [Dictionary of Occupational Titles] information.

SSR 00-4p, 2000 WL 1898704 at *2-3. Where there is an apparent, unresolved conflict about every occupation identified by a vocational expert, the ALJ's conclusion at step five is not supported by substantial evidence. *Boone v. Barnhart*, 353 F.3d 203, 208 (3d Cir. 2003) (concluding that the VE's testimony did not constitute substantial evidence that the claimant could perform a significant number

of jobs because "according to the DOT, [claimant could not] perform any of the occupations identified by the VE."); *cf. Rutherford v. Barnhart*, 399 F.3d 546, 557 (3d Cir. 2005) (concluding that an ALJ's decision was supported by substantial evidence where "inconsistencies [were] not present as to each of the jobs that the expert did list."). Furthermore, a "VE's testimony does not by itself provide substantial evidence of a significant number of jobs in the economy" that a claimant can perform, and an ALJ may not rely on the VE's opinion, where "'the expert is unable to testify *without qualification* about the jobs a claimant can perform.'" *Boone v. Barnhart*, 353 F.3d 203, 209 (3d Cir. 2003), as amended (Dec. 18, 2003) (quoting *Sias v. Sec'y of Health & Human Servs.*, 861 F.2d 475 (6th Cir.1988)) (emphasis added).

b.  THE ARGUMENTS

To support his conclusion that Plaintiff is not disabled, the ALJ relied on testimony given by a vocational expert during Plaintiff's administrative hearing and cited the following two (2) representative occupations:

> Video monitor, which is a sedentary exertion position (SVP2) per DOT 379.367-010, with 1,000 positions available in Pennsylvania and 28,000 positions available nationally; and,

> Order clerk, which is a sedentary exertion position (SVP2) per DOT 209.567-014, with 1,000 positions available in Pennsylvania and 32,000 positions available nationally (Hearing Testimony).

(Admin. Tr. 25). With regard to these positions, the ALJ stated:

> Pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the <u>Dictionary of Occupational Titles</u>, except testimony regarding bifurcation of the right from left upper extremity for reaching, handling, fingering, and feeling, and differentiation of climbing, which are not directly addressed by the DOT, as well as any other deviation from the DOT, was based on the vocational expert's experience, observation of the positions, and literature review (Exhibit 11E and Hearing Testimony).

(Admin. Tr. 25).

> During the hearing, the vocational expert testified that

> an individual of the same age, education, past work experience as that of [Plaintiff] . . . . [who is] capable of performing [sedentary, (Admin. Tr., p. 82),] exertional work . . . . [but] should avoid unprotected heights and industrial machinery . . . . [and] climbing ladders and scaffolds, but would have no limitations with respect to climbing ramps and stairs, balancing, crouching, crawling and kneeling[,] . . . . [and] would be capable of occasional exposure to temperature extremes, vibration and humidity[, (Admin. Tr., p. 77), but] also should avoid use of the right non-dominant hand for fingering and handling, except as an assist[, and] . . . . should avoid use of the right non-dominant upper extremity for pushing and pulling[, (Admin. Tr., p. 79),]

could do the job of "surveillance-system monitor," which the vocational expert and the ALJ refer to as "video monitor," found at 379.367-010, and the job of "order clerk, food and beverage," which the vocational expert and the ALJ refer to as "order clerk," found at 209.567-014. (Admin. Tr., pp. 82, 84). With regard to the job of surveillance-system monitor, the vocational expert testified that the

> dictionary title and description was [sic] last updated in 1986. Normally, when the DOT was compiled, the job description and analysis of work activity, there's job history in the DOT. So, they

would evaluate numerous types of video monitor jobs and outline the duties in the job cluster. For some reason, when the Department of Labor compiled the DOT, they utilized only a video monitor from a governmental transportation hub. So, the Department of Labor is in the process of replacing the DOT with the Occupational Requirements Survey, which is not completely published, but components of it are being released and with that said, they have evaluated the full scope or a greater scope and presented information on the video monitor in various occupational venues. There are components of these jobs now that are outlined in this ORS survey, but with the information in the DOT, at this unskilled level and the same components are extrapolated, which included, for example, the GED levels, the SVP, the aptitudes, the temperaments, the environmental conditions. So, there is consistency. I just wanted to point it out that the DOT is extremely limited in describing the type of video monitor that would exist today. So, there is a difference in what is reflected in the Dot. With that said, one thing that is different, however, if I could, the DOT has no use of the upper extremities whatsoever. Everything is at never. Reaching, handling, fingering and feeling. The new analysis does indicate that there would be components of hand use at occasional or less than occasional, as the individual may have to use a telephone, handle a writing implement or enter some information into a computer using a keyboard. So, there is some use of the hands. So, there is a different component, but in my analysis, it could be done with the use of the dominant hand, as it occurs in such a limited basis.

(Admin. Tr. 82-83). The entirety of the VE's testimony specifically about the order

clerk is: "Another sampling is under order clerk. The DOT title is order clerk,

sample code is 209.567-014, approximately 1,000 in the state and 32,000

nationally and that's at sedentary, SVP 2 and I believe, Your Honor, that's what we

have at the sedentary level, that are [INAUDIBLE] component." (Admin. Tr. 83-

84).

The vocational expert also testifies with regard to all occupations:

> the <u>Dictionary of Occupational Titles</u>, when it describes the frequency of use of both the upper or lower extremities, it's doing so bilaterally. It doesn't bifurcate or separate out the right from the left. The DOT just talks about using both upper extremities and it does specifically address the handling and fingering and in pushing and pulling is not specifically addressed by way of the DOT, but it would actually fall under reaching, as the manipulative definition is concerned and again that's not bifurcated. So, when I'm looking at the frequency in the DOT, we're looking at bilateral use.

(Admin. Tr. 80). When Plaintiff's attorney asked the VE, "Are any of the jobs you named . . . considered to be one armed jobs or one handed jobs," the vocational expert answered, "No." (Admin. Tr. 84-85). When asked whether no use "at all" of one upper extremity would "erode the unskilled job base at light and sedentary" exertional levels and, if so, "what kind of an erosion," the vocational expert testified that

> at [the] unskilled sedentary [exertional level] . . . . [i]t's a significant erosion . . . . I can't quantify it, because I would be speculating if I gave you a percentage. There's no data for me to reference. The Department of Labor just doesn't provide us with that data, at this point anyway. So I can only give you a general term to try to describe it.

(Admin. Tr. 85).

The <u>Dictionary of Occupational Titles</u> defines the terms reaching, handling, and fingering and the jobs at issue— surveillance-system monitor and order clerk, food and beverage. *Reaching* is "[e]xtending hand(s) and arm(s) in any direction." SCODICOT Appendix C(8). *Handling* is "[s]eizing, holding, grasping, turning, or

otherwise working with hand or hands. Fingers are involved only to the extent that they are an extension of the hand, such as to turn a switch or shift automobile gears." SCODICOT Appendix C(9). *Fingering* is "[p]icking, pinching, or otherwise working primarily with fingers rather than with the whole hand or arm as in handling." SCODICOT Appendix C(10).

The DOT describes the activities of "surveillance-system monitor" (regularly referred to throughout the hearing and decision as a "video monitor") as:

> Monitors premises of public transportation terminals to detect crimes or disturbances, using closed circuit television monitors, and notifies authorities by telephone of need for corrective action: Observes television screens that transmit in sequence views of transportation facility sites. Pushes hold button to maintain surveillance of location where incident is developing, and telephones police or other designated agency to notify authorities of location of disruptive activity. Adjusts monitor controls when required to improve reception, and notifies repair service of equipment malfunctions.

DICOT 379.367-010. 1991 WL 673244. "Surveillance-system monitor" is sedentary work, meaning that a surveillance-system monitor may exert "up to 10 pounds of force occasionally ( . . . up to 1/3 of the time) and/or a negligible amount of force frequently ( . . . from 1/3 to 2/3 of the time) to lift, carry, push, pull, or otherwise move objects, including the human body." *Id*. A surveillance-system monitor may be required to "[w]rite reports and essays with proper format, punc[t]uation, spelling, and grammar, using all parts of speech." *Id*. The DOT states that a surveillance-system monitor does not do a significant amount of

handling and requires only a low degree—the lowest 1/3 excluding the bottom 10%—of aptitude ability in motor coordination, finger dexterity, and manual dexterity. *Id*. A surveillance-system monitor, as defined by the DOT, does not need to engage in climbing, balancing, stooping, kneeling, crouching, crawling, reaching, handling, or fingering. *Id*.

The DOT describes the activities of "order clerk, food and beverage" (regularly referred to throughout the hearing and decision simply as an "order clerk") as:

> Takes food and beverage orders over telephone or intercom system and records order on ticket: Records order and time received on ticket to ensure prompt service, using time-stamping device. Suggests menu items, and substitutions for items not available, and answers questions regarding food or service. Distributes order tickets or calls out order to kitchen employees. May collect charge vouchers and cash for service and keep record of transactions. May be designated according to type of order handled as Telephone-Order Clerk, Drive-In (hotel & rest.); Telephone-Order Clerk, Room Service (hotel & rest.).

DICOT 209.567-014, 1991 WL 671794. Order clerk is sedentary work, meaning that an order clerk may exert "up to 10 pounds of force occasionally ( . . . up to 1/3 of the time) and/or a negligible amount of force frequently ( . . . from 1/3 to 2/3 of the time) to lift, carry, push, pull, or otherwise move objects, including the human body." *Id*. An order clerk may be required to "[w]rite compound and complex sentences, using cursive style, proper end punc[t]uation, and employing adjectives and adverbs." *Id*. Order clerks engage in significant copying but not significant

handling. *Id*. The DOT sates that an order clerk requires only a low degree—the lowest 1/3 excluding the bottom 10%—of aptitude ability in motor coordination, finger dexterity, and manual dexterity. *Id*. An order clerk, as defined by the DOT, does not need to engage in climbing, balancing, stooping, kneeling, crouching, or crawling, but *frequently* (1/3 to 2/3 of the time) engages in reaching, handling, and fingering. *Id.*

Plaintiff essentially argues that the ALJ's decision at Step Five is not supported by substantial evidence because the ALJ failed to reconcile the conflict between Plaintiff's ability to use only Plaintiff's left, dominant hand, as found by the ALJ in the RFC determination, and the requirement of use of both hands for the performance of the jobs of surveillance-system monitor and order clerk, food and beverage. (Doc. 17, p. 5).

In her brief, the Commissioner argues:

[T]he ALJ properly relied on the VE's testimony that work existed in significant numbers in the national economy for an individual with Plaintiff's limitations. *See* 20 C.F.R. § 404.1560; Social Security Ruling (SSR) 83-12, 1983 WL 31253, at *2 ("Where the extent of erosion of the occupational base is not clear, the adjudicator will need to consult a vocational resource. . . . Vocational experts may testify for this purpose at the hearing and appeals levels.")

At the administrative hearing, the ALJ posed a series of hypothetical questions that included Plaintiff's limitations (Tr. 77-82). The VE testified that an individual who, in relevant part, was limited to sedentary work; should avoid use of the right non-dominant hand for fingering and handling, except as an assist; and should avoid use of the right non-dominant upper extremity for pushing and pulling, could,

despite his limitations, perform the jobs of video monitor and order clerk (Tr. 82-84). Importantly, the VE explained that the DOT did not separate out the right arm from the left arm when describing the frequency of use of the upper extremities, and did not address pushing and pulling as it did with handling and fingering (Tr. 80). She further explained that the DOT description of video monitor did not necessarily correspond to positions that exist today, and that while the DOT indicates no use of the upper extremities for this position, the VE relied on sources indicating that this job would involve occasional or less hand use that could be performed with the dominant hand (Tr. 83). The VE further testified that the sedentary occupational base would be eroded for an individual limited to using only one upper extremity, but did not testify that all such work would be precluded with this limitation (Tr. 85). This testimony constitutes substantial evidence.

Although Plaintiff asserts that SSRs 85-15 and 96-9p provide that the use of one hand has a preclusive effect on the occupational base of work available (Pl.'s Br. at 6-13), he is wrong. SSR 85-15 instructs that an ALJ may need a vocational source to assist with determining the amount of erosion caused by upper extremity limitations; it does not direct a finding of disability where an individual has significant unilateral extremity limitations. 1985 WL 56857, at *7. Additionally, SSR 96-9p explains that one of its primary purposes is to explain that a finding that an individual has the ability to do less than a full range of sedentary work does not necessarily equate with a decision of "disabled." 1996 WL 374185 at *1. When the extent of erosion of the unskilled sedentary occupational base is not clear, or involves more complex issues, the adjudicator may use the resources of a vocational specialist or vocational expert in determining the extent of the erosion of the occupational base. *Id*. at *9. In such a case, the vocational expert may provide examples of occupations the individual may be able to perform and citations of the existence and number of jobs in such occupations in the national economy. *Id*.

Here, the ALJ sought testimony of a vocational resource to address the extent to which the sedentary occupational base was eroded by Plaintiff's additional limitations, fulfilling his duty under this SSR. Specifically, the VE provided testimony that jobs still existed even with the eroded occupational base (Tr. 80-85). Courts have recognized that plaintiffs who could use one arm without significant limitations could

perform jobs where there was no bilateral requirement. *See, e.g., Peters v. Astrue*, No. CIV. 10-851NLH, 2011 WL 65914, at *6 (D.N.J. Jan. 10, 2011) (affirming the ALJ's decision where the VE testified that an individual limited to performing sedentary work with only one hand could perform the job of surveillance monitor); *Nally v. Astrue*, No. 3-10-CV-1631-BD, 2011 WL 3844107, at *5 (N.D. Tex. Aug. 29, 2011); *Allen v. Comm'r of Soc. Sec.*, No. 13-CV-14106, 2015 WL 574910, at *12 (E.D. Mich. Feb. 11, 2015) (upholding the Commissioner's step five burden where the VE testified that a "sedentary level sorter position," could be performed one-handed). Thus, Plaintiff's reliance on SSRs 85-15 and 96-9p is misplaced, particularly given that there is no apparent conflict between the DOT and the VE's testimony where the VE explicitly discussed the reasons why her testimony differed from the DOT with respect to unilateral limb use (Pl.'s Br. at 12-13).

(Doc. 18, pp. 9-12).

Here, the ALJ said that Plaintiff can only use his right, non-dominant hand "as an assist." (Admin. Tr. 19). Plaintiff states that the vocational expert reported that the jobs of surveillance-system monitor and order clerk, food and beverage, are not considered "one-armed or one-handed jobs." (Doc. 17 at 12). With regard to the occupation of "order clerk," Plaintiff states, "The position of an order clerk requires frequent handling and fingering of both hands." (Doc. 17, p. 12). Plaintiff is correct. An order clerk frequently, meaning at least 1/3 and up to 2/3 of the time, engages in reaching, handling, and fingering. DICOT 209.567-014, 1991 WL 671794. The vocational expert did not explain the inclusion of this occupation. (Admin. Tr. 84). Although the vocational expert did not tell the ALJ that reaching, handling, and fingering are frequent in the position of order clerk, any inquiry at all would have revealed this conflict. Therefore, the ALJ was required to ask the

vocational expert about the conflict, SSR 00-4p, 2000 WL 1898704 at *2-3, and the ALJ did not ask the vocational expert for a reasonable explanation (*Id.*) nor, as also required, provide any explanation in his decision of the inclusion of "order clerk" despite the conflict. (Admin. Tr. 24-25). Even the Commissioner did not specifically defend the inclusion of this occupation after the conflict was pointed out in Plaintiff's brief. (Doc. 18, pp. 8-12). Therefore, I find that inclusion of the occupation of "order clerk" was in error.

In response to Plaintiff's assertion that video monitor is not a one-handed job, the Commissioner states that the Vocational Expert

> further explained that the DOT description of video monitor did not necessarily correspond to positions that exist today, and that while the DOT indicates no use of the upper extremities for this position, the VE relied on sources indicating that this job would involve occasional or less [than occasional] hand use that could be performed with the dominant hand.

(Doc. 18, pp. 9-12 (citing (Admin. Tr. 83)). In fact, the vocational expert testified that when the description was published, the Department of Labor based the description upon "only a video monitor from a governmental transportation hub." (Admin. Tr. 83). The vocational expert testified that, because of this discrepancy, the Department of Labor is working to replace the description of the video monitor job in the U.S. Bureau of Labor Statistics Occupational Requirements Survey, and the new description includes "components of hand use at occasional or less than occasional, as the individual may have to use a telephone, handle a writing

implement or enter some information into a computer using a keyboard." (*Id.*).

Then the Vocational Expert testified that the job of video monitor "in my analysis,

[] could be done with the use of the dominant hand, as it occurs in such a limited

basis." (*Id.*). Although Plaintiff alleges that, contrary to law, the ALJ did not ask

the vocational expert for a reasonable explanation for the conflict between the

VE's testimony and the DOT (Doc. 17, p. 6), here, the DOT does not conflict with

the VE's testimony. (*See* Admin. Tr. 82-86). According to the DOT, a

surveillance-system monitor does not engage in reaching, handling, or fingering.

DICOT 379.367-010. 1991 WL 673244.

Here, it seems Plaintiff is conflating the DOT with O*NET and the

Occupational Requirements Survey. In other words, Plaintiff is confusing the

requirement that the ALJ ask the vocational expert to reasonably explain the ways

the VE's testimony conflicts with the DOT with a requirement that the ALJ ask the

vocational expert to explain all conflicts in the VE's testimony, which is not a

requirement in the Third Circuit. *See Gartland v. Colvin*, No. 3:13-cv-02668-GBC,

2015 U.S. Dist. LEXIS 129892, at *51 (M.D. Pa. Sep. 28, 2015); *Junod v.

Berryhill*, Civil Action No. 17-1498, 2018 U.S. Dist. LEXIS 188699, at *7 (W.D.

Pa. Nov. 5, 2018) (compiling cases in the Third Circuit cases in which courts have

rejected the requirement that ALJs address conflicts between the DOT and

O*NET). Although the vocational expert testified that the Occupational

Requirement Survey indicated that some hand use is now expected for jobs equivalent to "surveillance-system monitor," the vocational expert testified that Plaintiff could still do those jobs. (Admin. Tr. at 83). No conflict exists between the VE's testimony and the DOT, and I find that the ALJ's determination that Plaintiff can perform the job of surveillance-system monitor is supported by substantial evidence.

Although Plaintiff raises only one error in his statement of errors, Plaintiff regularly discusses the erosion of the number of unskilled, sedentary jobs caused by additional RFC limitations. (*See* Doc. 17, pp. 6-8, 12 (citing SSR 96-9, 1996 WL 374185, at*8 (1996)). It seems that Plaintiff understands the term *erosion* in this context to mean the lessening of employment opportunities *within* the job category of surveillance-system monitor. However, the job category as a whole is considered not to require reaching, handling, or fingering. DICOT 379.367-010. 1991 WL 673244. Therefore, there is no known erosion of the job base within the surveillance-system monitor category caused by Plaintiff's RFC. Furthermore, in the Third Circuit, an ALJ adequately considers the extent of erosion on a claimant's occupational base for sedentary work and its significance when an ALJ consults a vocational expert and the vocational expert testifies that there are "a significant number of jobs in the economy that the claimant could perform with the limitations recognized by the ALJ and posed to the VE in a hypothetical." *Tisoit v.*

*Barnhart*, 127 F. App'x 572, 573 (3d Cir. 2005). Finally, in 2013, the Third Circuit found that, where a plaintiff could work as a surveillance-system monitor, with 569 surveillance-system monitor jobs in Pennsylvania, sufficient jobs existed in the national and Pennsylvania economies for the plaintiff to be found not disabled. *Ahmad v. Comm'r of Soc. Sec.*, 531 Fed. Appx. 275 (3d Cir. 2013). Here, the vocational expert has testified that approximately 1,000 surveillance-system monitor jobs are available in Pennsylvania. I cannot find this number insufficient.

Having concluded that substantial evidence supports the ALJ's determination that Plaintiff can perform the occupation of surveillance-system monitor, I find that the ALJ's determination at Step Five is supported by substantial evidence.

V.    CONCLUSION

Accordingly, I find that that Plaintiff's request for remand be Denied as follows:

(1)    The final decision of the Commissioner will be AFFIRMED.

(2)    Final judgment will be issued in favor of the Commissioner of Social Security.

(3)    Appropriate Orders will be issued.

Date: September 20, 2022                    BY THE COURT

                                           *s/William I. Arbuckle*
                                           William I. Arbuckle
                                           U.S. Magistrate Judge